```
                                                              FILED
                                                            JUN 1 1 2008
         UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF COLUMBIA              NANCY MAYER WHITTINGTON, CLERK
                                                        U.S. DISTRICT COURT
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Case No. 08-029 (RBW) -2 |
| v. | : | Status Hearing: June 11, 2008 |
| ALONDO SUTTON, | : | |
| Defendant. | : | |

## GOVERNMENT'S SUBMISSION TO THE COURT IN PREPARATION FOR THE UPCOMING PLEA HEARING OF ALONDO SUTTON

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following in preparation for a plea hearing in the instant case.

**I.   COPY OF THE PLEA AGREEMENT:**

A copy of the plea agreement dated April 1, 2008 is attached.

**II.   ELEMENTS OF THE OFFENSE:**

The essential elements of the offense of Unlawful Distribution of Five Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii) are:

1. That the defendant distributed five grams or more of cocaine base, also known as crack, which the law makes a controlled substance. "Distribute" means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return.

2. That the defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

III. **FACTUAL PROFFER:**

The United States and Defendant Alondo Sutton agree and stipulate as follows:

On November 15, 2007, a confidential informant (CI) working with an undercover officer (UC) from the Narcotics and Special Investigations Division (NSID) of the Metropolitan Police Department, made an unrecorded phone call to co-defendant Yolanda Sutton and told her that the CI had someone who wanted to purchase some crack cocaine. The CI and co-defendant Yolanda Sutton agreed to meet the following day.

On November 16th, the CI and the UC walked to the defendants' home at #5 Temple Court, N.W., Washington, D.C., and knocked on the front door. Co-defendant Yolanda Sutton answered the door and allowed them to enter the house. They walked into the kitchen and the UC gave Yolanda Sutton $300. Ms. Sutton then walked out of the kitchen and went up the stairs to the second level. A short time later co-defendant Yolanda Sutton gave the UC a napkin that contained 11 small ziplocks of a rock-like substance believed to be crack cocaine. As the UC and the CI walked out of the apartment, Yolanda Sutton gave the UC her phone number and told the UC to call her if he needed any more cocaine. A subsequent DEA analysis confirmed that the rock-like substance sold by Yolanda Sutton was 1.8 grams of cocaine base, also known as crack cocaine.

On November 20, 2007, the CI made an unrecorded call to co-defendant Yolanda Sutton and arranged for the UC to purchase $700 work of crack cocaine. At approximately 4:10 p.m., the UC and CI met at in the 1100 block of North Capitol Street and they walked to the defendants' home. The CI knocked on the door and then opened it and walked inside with the UC. As they stood in the foyer by the stairs, co-defendant Yolanda Sutton walked halfway down

the steps from the second level and sat down on a step. The UC walked over and gave co-defendant Yolanda Sutton $700. She counted the money and told the UC that her son, defendant Alondo Sutton, had gone to get the crack cocaine. The UC waited in the living room and shortly thereafter, defendant Alondo Sutton walked into the apartment and gave the UC a knotted plastic bag that contained a rock-like substance believed to be crack cocaine. The UC and the CI then left the apartment. A subsequent DEA analysis confirmed that the substance sold by the defendants was 5.2 grams of cocaine base, also known as crack cocaine.

On December 6, 2007, at approximately 3:30 p.m., the UC and the CI walked to the defendants' home. Once there, the CI opened the front door and they entered the home and walked to the kitchen where they found defendant Alondo Sutton. Alondo Sutton reached into his right front pants pocket and removed an knotted plastic bag that contained a rock-like substance believed to be crack cocaine and gave it to the UC in exchange for $800. As Alondo Sutton counted the money, the UC asked if he could have Sutton's phone number so the UC could make the arrangements directly with Sutton, and Sutton agreed. After obtaining Sutton's phone number, the UC and the CI left the apartment. After returning to NSID, the UC positively identified photographs of Alondo and Yolanda Sutton, and a subsequent DEA analysis confirmed that the rock-like substance was 5.6 grams of cocaine base, also known as crack cocaine.

On December 20, 2007, the UC called defendant Alondo Sutton's cell phone on a recorded call and told him that he wanted to purchase some cocaine the following day around 2:00 p.m.. The defendant told the UC to call him the next day and the UC asked if he could leave the CI out of it so he would not have to pay her anything. The defendant told the UC that he had given the UC his cell phone number so that the UC could deal with him directly.

On December 21, 2007, at approximately 1:25 p.m., the UC called defendant Alondo Sutton to set up the deal for later that day. The defendant asked the UC how much he wanted, to which the UC replied that he had five or six hundred dollars. Less than one hour later, the UC called Alondo Sutton who asked him to come to the Temple Court residence. The UC walked to #5 Temple Court and co-defendant Yolanda Sutton let him in the house. Yolanda Sutton then asked, "Did he [Alondo] tell you what I said?" She then told the UC that her son was supposed to tell the UC to wait 15 minutes because she needed to run out and get more crack cocaine because the supply she had was no good. The UC and Yolanda Sutton then left the house together. As the UC walked away, surveillance units saw Yolanda Sutton meet up with a man and walk out of sight on K Street.

Approximately 20 minutes later, the UC went back to #5 Temple Court and Alondo Sutton opened the door and told him to come inside. The UC walked into the kitchen with Alondo Sutton and Alondo Sutton handed him a cell phone so the UC could speak with Yolanda Sutton. In a recorded call, Ms. Sutton told the UC that "he" was cooking the crack now and waiting for it to dry so it would be the correct weight. She asked the UC how much time he had and said that she could bring it to him later. The UC told Yolanda Sutton that he could wait another twenty minutes and he left the house and headed back towards North Capitol Street.

At 2:35, p.m. Alondo Sutton called the UC and told him to come back to the house. When the UC got there, he received another call from Alondo Sutton who told him to go into the house. The UC walked into the house and when he determined that there was no one inside he walked out and waited on the front porch. Five minutes later, the UC saw the defendant walking down North Capitol Street, and into the parking lot. Alondo Sutton nodded toward the UC and

the UC followed Alondo Sutton onto North Capitol Street. Alondo Sutton was talking on his cell phone as the UC walked behind him. Alondo Sutton then placed his right hand behind his back and the UC removed a plastic bag that contained a rock-like substance believed to be crack cocaine. In return the UC gave Alondo Sutton $600 and left the area. A subsequent DEA analysis confirmed that the substance was 5.9 grams of cocaine base, also known as crack cocaine.

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government or the defendant, but is instead a statement of facts intended to provide the necessary factual predicate for the guilty plea in this case. In addition, this proffer contains facts that relate to specific offense characteristics contained in Section 2D1.1 of the United States Sentencing Guidelines that the parties agree are applicable in this case. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for entry of the defendant's plea of guilty and for application of the specific offense characteristics that are set forth in the plea agreement entered into by the parties.

IV. **STATEMENT OF ALL POTENTIAL PENALTY CONSEQUENCES:**

Pursuant to 21 U.S.C. § 841(b)(1)(B)(iii), the offense of Unlawful Distribution of Five Grams or More of Cocaine Base carries a term of imprisonment of not less than five years and not more than forty years, a $2,000,000 fine, or both, an obligation to pay any applicable interest or penalties on fines not timely made, and a term of at least four years of supervised release. If the Court finds that the defendant has met the requirements of 18 U.S.C. § 3553(f), commonly known as the Safety Valve Provision, the statutory minimum sentence will not apply.

The defendant may also be ordered to pay a special assessment of $100 to the Clerk of the

United States District Court for the District of Columbia prior to the date of sentencing. Pursuant to 18 U.S.C. § 3571 and Section 5E1.2 of the Sentencing Guidelines, the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release and period of probation.

V.  **NOTICE OF AGGRAVATED FELONY:**

Defendant Alondo Sutton is a United States citizen and is not subject to deportation.

VI. **SUPERCEDING INDICTMENT OR NEW INFORMATION:**

None.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____
JEAN W. SEXTON
Assistant U.S. Attorney
N.J. Bar 02122-1995
U.S. Attorney's Office
555 4th Street, N.W., Room 4235
Washington, D.C. 20530
202-305-1419; jean.sexton@usdoj.gov

## DEFENDANT'S ACCEPTANCE

I have read this submission, including the elements of the offense section, the attached plea agreement, and the factual proffer, and have discussed it with my attorney, Joanne Vasco, Esquire. I fully understand this submission and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this submission and the attached plea agreement. I am satisfied with the legal services provided by my attorney in connection with this submission and plea agreement and matters related to it.

Date: 6-11-08

Alondo Sutton
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this submission and the attached plea agreement, reviewed them with my client, Alondo Sutton, and discussed the provisions of the submission and agreement with my client, fully. These pages accurately and completely sets forth the entire submission and plea agreement. I concur in my client's desire to plead guilty as set forth in this submission and agreement.

Date: 6-11-08

Joanne Vasco, Esquire
Attorney for the Defendant