UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
AUG 16 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA )
)
)
v. ) Criminal Action No. 08-29-2 (RBW)
) Civil Action No. 11-513 (RBW)
)
ALONDO SUTTON, )
)
Defendant. )

## MEMORANDUM OPINION

Alondo Sutton, the pro se defendant in this criminal case, was sentenced to, inter alia, a sixty-month prison sentence as a result of pleading guilty to one count of Unlawful Distribution of Five Grams or More of Cocaine Base, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii). See Government's Opposition to Defendant's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Gov't's Opp'n"), Ex. B (Plea Agreement) ¶ 1. Currently before the Court is the defendant's motion to modify his sentence under 28 U.S.C. § 2255 (2006), arguing that his sentence should be reduced from sixty months to a term of incarceration between thirty and thirty-seven months. January 26, 2010 Letter from Alondo Sutton to the Court ("Def.'s Mot.") at 1.[1] After carefully considering the defendant's motion, the government's opposition memorandum, and all the exhibits attached to those submissions, the Court concludes for the following reasons that it must deny the defendant's Section 2255 motion to modify his sentence, and that an evidentiary hearing is unnecessary to resolve this motion.

---

[1] The Court issued an Order on February 22, 2011, in which it concluded that "the defendant[] fail[ed] to timely inform the Court . . . of his intention either to have this Court treat his January 26, 2010 letter as a motion . . . under 28 U.S.C. § 2255, or to amend or withdraw his request," and thus, the Court ordered that his letter "shall be treated as a motion under Section 2255 for reconsideration of his sentence imposed by the Court." February 22, 2011 Order at 1, United States v. Sutton, Criminal Action No. 08-29-02 (RBW) (D.D.C.).

1

# I. Background[2]

On November 15, 2007, a confidential informant working with an undercover police officer made an unrecorded phone call to co-defendant Yolanda Sutton (Alondo Sutton's mother), informing her that someone wanted to purchase crack cocaine. Gov't's Opp'n, Ex. A (The Government's Submission to the Court in Preparation for the Upcoming Plea Hearing of Alondo Sutton ("Gov't's Mem.")) at 2. Following up on that conversation, the informant made another call to Ms. Sutton on November 20, 2007, and arranged for the sale and purchase of $700 worth of crack cocaine. Id. They agreed that the transaction would take place later that day at the defendant's home. Id. When the informant and the undercover officer arrived at the defendant's home, the undercover officer gave Ms. Sutton payment for the crack cocaine. Id. at 3. While Yolanda Sutton was counting the money, Mr. Sutton gave the officer the crack cocaine.[3] Id. Two similar transactions took place in the following weeks. See id. at 3-5 (asserting that the undercover officer obtained additional crack cocaine from Mr. Sutton on December 6, 2007, and December 21, 2007).

A four-count indictment was returned by a federal grand jury on February 15, 2008, with three of those counts pertaining to Mr. Sutton. Specifically, Mr. Sutton was indicted for three counts of Unlawful Distribution of Five Grams or More of Cocaine Base, also known as crack, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and of Aiding and Abetting in violation of 28 U.S.C. § 2.[4] See Indictment ("Indict.") at 2-3. The government offered Mr. Sutton an opportunity to resolve the charges against him through a plea agreement, whereby the

---

[2] The relevant facts in this case are taken from the government's opposition and the exhibits attached thereto.

[3] A subsequent Drug Enforcement Agency ("DEA") analysis confirmed that the substance sold by the defendant and Yolanda Sutton was 5.2 grams of crack cocaine. Gov't's Mem. at 3.

[4] The first of the four counts was for the Unlawful Distribution of Five Grams or More of Cocaine Base, also known as crack, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), which was brought solely against Yolanda Sutton.

government agreed to dismiss two of the counts if he agreed to plead guilty to the remaining count. Gov't's Opp'n, Ex. B (The Plea Agreement) ¶¶ 2-3. The defendant agreed to accept the government's offer, and at a June 11, 2008 hearing, the Court accepted his guilty plea. Gov't's Opp'n, Ex. C (the June 11, 2009 Plea Hearing Transcripts ("Plea Hr'g Tr.")) at 44:14-22. Furthermore, Mr. Sutton agreed to the following during the hearing: (1) that he had reviewed the government's guilty-plea offer with his attorney, id. at 4:6-14; (2) that he understood the offer, id. at 4:15-17; (3) that he realized he faced a mandatory minimum sixty month prison sentence under 21 U.S.C. § 841 (b)(1)(B)(iii), id. at 7:17-24; and (4) that he had, in fact, distributed crack cocaine, id. at 6:9-12, 28:13-33:7. Based on these representations, the Court accepted his guilty plea, concluding that it was a "knowing and intelligent plea . . . with full appreciation of what the consequences [we]re." Id. at 44:19-22. On October 31, 2008, the Court sentenced Mr. Sutton to a sixty-month term of incarceration, followed by five years of supervised release. Gov't's Opp'n at 1.

Mr. Sutton then filed his Section 2255 motion on January 26, 2010, arguing that the length of his sentence should be reduced based on his counsel's ineffective assistance. See Def.'s Mot. at 1 (alleging that counsel erroneously promised the defendant that if he pleaded guilty, he would be "plea[d]ing guilty to the 30-37 month guideline"). Although it is not clearly articulated, Mr. Sutton is apparently alleging that his counsel, Joanne Vasco, was constitutionally deficient in the following ways: (1) she informed the defendant that if he pleaded guilty, he would be subject to only a thirty to thirty-seven month period of incarceration under the United States Sentencing Guidelines; (2) she failed to ask the Court to consider a thirty to thirty-seven month prison sentence; (3) she filed a sentencing memorandum with the Court against his wishes, asking the Court not to "exce[ed] the [sixty] month[] mandatory minimum status for

government agreed to dismiss two of the counts if he agreed to plead guilty to the remaining count. Gov't's Opp'n, Ex. B (The Plea Agreement) ¶¶ 2-3. The defendant agreed to accept the government's offer, and at a June 11, 2008 hearing, the Court accepted his guilty plea. Gov't's Opp'n, Ex. C (the June 11, 2009 Plea Hearing Transcripts ("Plea Hr'g Tr.")) at 44:14-22. Furthermore, Mr. Sutton agreed to the following during the hearing: (1) that he had reviewed the government's guilty-plea offer with his attorney, id. at 4:6-14; (2) that he understood the offer, id. at 4:15-17; (3) that he realized he faced a mandatory minimum sixty month prison sentence under 21 U.S.C. § 841 (b)(1)(B)(iii), id. at 7:17-24; and (4) that he had, in fact, distributed crack cocaine, id. at 6:9-12, 28:13-33:7. Based on these representations, the Court accepted his guilty plea, concluding that it was a "knowing and intelligent plea . . . with full appreciation of what the consequences [we]re." Id. at 44:19-22. On October 31, 2008, the Court sentenced Mr. Sutton to a sixty-month term of incarceration, followed by five years of supervised release. Gov't's Opp'n at 1.

Mr. Sutton then filed his Section 2255 motion on January 26, 2010, arguing that the length of his sentence should be reduced based on his counsel's ineffective assistance. See Def.'s Mot. at 1 (alleging that counsel erroneously promised the defendant that if he pleaded guilty, he would be "plea[d]ing guilty to the 30-37 month guideline"). Although it is not clearly articulated, Mr. Sutton is apparently alleging that his counsel, Joanne Vasco, was constitutionally deficient in the following ways: (1) she informed the defendant that if he pleaded guilty, he would be subject to only a thirty to thirty-seven month period of incarceration under the United States Sentencing Guidelines; (2) she failed to ask the Court to consider a thirty to thirty-seven month prison sentence; (3) she filed a sentencing memorandum with the Court against his wishes, asking the Court not to "exce[ed] the [sixty] month[] mandatory minimum status for

government agreed to dismiss two of the counts if he agreed to plead guilty to the remaining count. Gov't's Opp'n, Ex. B (The Plea Agreement) ¶¶ 2-3. The defendant agreed to accept the government's offer, and at a June 11, 2008 hearing, the Court accepted his guilty plea. Gov't's Opp'n, Ex. C (the June 11, 2009 Plea Hearing Transcripts ("Plea Hr'g Tr.")) at 44:14-22. Furthermore, Mr. Sutton agreed to the following during the hearing: (1) that he had reviewed the government's guilty-plea offer with his attorney, id. at 4:6-14; (2) that he understood the offer, id. at 4:15-17; (3) that he realized he faced a mandatory minimum sixty month prison sentence under 21 U.S.C. § 841 (b)(1)(B)(iii), id. at 7:17-24; and (4) that he had, in fact, distributed crack cocaine, id. at 6:9-12, 28:13-33:7. Based on these representations, the Court accepted his guilty plea, concluding that it was a "knowing and intelligent plea . . . with full appreciation of what the consequences [we]re." Id. at 44:19-22. On October 31, 2008, the Court sentenced Mr. Sutton to a sixty-month term of incarceration, followed by five years of supervised release. Gov't's Opp'n at 1.

Mr. Sutton then filed his Section 2255 motion on January 26, 2010, arguing that the length of his sentence should be reduced based on his counsel's ineffective assistance. See Def.'s Mot. at 1 (alleging that counsel erroneously promised the defendant that if he pleaded guilty, he would be "plea[d]ing guilty to the 30-37 month guideline"). Although it is not clearly articulated, Mr. Sutton is apparently alleging that his counsel, Joanne Vasco, was constitutionally deficient in the following ways: (1) she informed the defendant that if he pleaded guilty, he would be subject to only a thirty to thirty-seven month period of incarceration under the United States Sentencing Guidelines; (2) she failed to ask the Court to consider a thirty to thirty-seven month prison sentence; (3) she filed a sentencing memorandum with the Court against his wishes, asking the Court not to "exce[ed] the [sixty] month[] mandatory minimum status for

[his] sentence" even though, from his perspective, the Guideline incarceration range was thirty to thirty-seven months; and (4) she failed to fully explain the sentencing procedures, including the mandatory minimum sentence and the advisory sentencing guidelines. Id.

The government opposes Mr. Sutton's Section 2255 motion, arguing that he has not satisfied his "burden of showing that Ms. Vasco's assistance was ineffective." Gov't's Opp'n at 3. Additionally, the government contends that even if Ms. Vasco's performance was constitutionally deficient because she promised Mr. Sutton that he would receive a lighter sentence for pleading guilty, the record "demonstrates numerous occasions on which the defendant was notified in both writing and orally that the sentence he received could be determined only by the Court and that the Court was required by statute to impose a mandatory minimum sentence of [sixty] months." Id. at 5. Finally, the government asserts that Mr. Sutton's claim of "attorney errors are directly controverted by the record," and hence, Mr. Sutton's claims of ineffective counsel are not sufficient to warrant an evidentiary hearing. Id. at 2.

## II. Standard of Review

The defendant's challenge to his conviction and sentence is made pursuant to 28 U.S.C. § 2255, which permits a person in custody under sentence by a federal court to "move the court which imposed the sentence to vacate, set aside[,] or correct the sentence," on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, . . . that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the reviewing court finds that any of these grounds exist, it "shall vacate and set the judgment aside[,] and [it] shall [also] discharge the prisoner[,] resentence him[,] grant a new

4

trial[,] or correct the sentence as may appear appropriate." Id. § 2255(b). Under Section 2255, a district court must grant an evidentiary hearing to conduct additional fact-finding necessary to resolve the motion "[u]nless the motion[s,] the files[,] and the records of the case conclusively show that the prisoner is entitled to no relief." Id. However, "[e]ven if the files and records of the case do not clearly rebut the allegations of the prisoner, no hearing is required where [the prisoner's] claims are 'vague, conclusory, or palpably incredible.'" United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). In making this assessment, the Court must construe the defendant's pro se filings liberally. Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002).

### III. Legal Analysis

The issue before the Court is whether the defendant's counsel failed to provide him effective assistance as guaranteed by the Sixth Amendment to the United States Constitution during his guilty plea and sentencing hearings. To prevail on his ineffective assistance of counsel claim, the defendant must demonstrate both deficient performance by his counsel and prejudice to him because of that deficient performance. United States v. Williams, 488 F.3d 1004, 1010 (D.C. Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Counsel's performance is deficient only if she "made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Strickland, 466 U.S. at 687, which requires that counsel provide "reasonably effective assistance," id.; see also Hill v. Lockhart, 474 U.S. 52, 56 (1985) ("Where, as here, a defendant is represented by counsel during the plea process and enters his guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence determined of an attorney in criminal cases.'" (citation omitted)). When entertaining claims of ineffective

assistance of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Prejudice occurs if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. At bottom, the defendant faces a heavy burden in his effort to establish that his lawyer was ineffective. With this framework as its guide, the Court will address each of the defendant's arguments.

A.   **The Defendant's Failure to Demonstrate Prejudice.**

Assuming that counsel's performance was constitutionally deficient,[5] Mr. Sutton bears the burden of demonstrating that he was prejudiced by counsel's errors. Id. at 687. Moreover, he must show that the prejudice was so serious that it deprived him of a fair proceeding. Id. Having pleaded guilty, Mr. Sutton has the burden of demonstrating that there is a reasonable probability that but for Ms. Vasco's purported errors, he would not have pleaded guilty and would have instead proceeded to trial. Hill, 474 U.S. at 59.

Here, Mr. Sutton cannot establish that he suffered any prejudice as a result of his counsel's purported errors. First, Mr. Sutton cannot argue that he would have proceeded to trial had he known about the sixty-month mandatory sentence because the record reflects that he was made aware of the sixty-month mandatory minimum sentence by his attorney (and also the Court), yet he pleaded guilty in any event. For instance, the written Plea Agreement, which Mr. Sutton signed, states, "[y]our client understands that pursuant to 21 U.S.C. § 841(b)(1)(B)(iii),

---

[5] The Court need not address both the deficient performance and prejudice prongs, as "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. Because it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course [will] be followed" here. Id.

this charge carries a term of imprisonment of not less than five years." Gov't's Opp'n, Ex. B (The Plea Agreement) ¶ 2. Indeed, the Court also informed Mr. Sutton several times during the plea hearing that he was pleading guilty to a charge that carries a statutory minimum of sixty months, unless he qualified for the "Safety Valve" provision under the United States Sentencing Guidelines. Gov't's Opp'n, Ex. C (Plea Hr'g Tr.) at 7:17-24, 9:18-11:19. In addition, the defendant was advised of the five prerequisites he would have to prove to be Safety Valve eligible.[6] Id. In response to this information, Mr. Sutton expressly acknowledged that he understood the sentencing consequences of his guilty plea:

> The COURT: In reference to this charge that you are pleading guilty to, these are the potential penalties: as far as prison is concerned, the law requires that you have to be sentenced to at least five years in prison . . . . Do you understand that?
>
> The DEFENDANT: Yes.
>
> The COURT: Understanding that, do you still want to enter a plea of guilty?
>
> The DEFENDANT: Yes.
>
> . . .
>
> The COURT: Now, the only way that you can avoid having to do at least the five-year sentence is if you qualify under what is called the Safety-Valve provision of the United States Code [and] the United States Sentencing Guidelines. Have you been told about that?
>
> The DEFENDANT: Yes.

---

[6] The defendant was advised that the Safety Valve provision is available to a defendant if he can demonstrate, by a preponderance of the evidence, the following five requirements: (1) that the defendant's criminal history score under the Sentencing Guidelines is not more than Level 1; (2) that no form of violence or use of a dangerous weapon was employed in the commission of the offense for which the defendant is before the court; (3) that the defendant was a low-level participant in the offense; (4) that at the time of the sentencing the defendant has provided to the government all information he possessed about the matter for which he is before the court; and (5) that the offense did not result in death or serious bodily injury. 18 U.S.C. § 3553(f); United States Sentencing Guidelines Manual § 5C1.2 (2007).

Id. at 7:17-8:2, 9:18-23. And after being advised of the five prerequisites required for Safety Valve eligibility, id. 9:24-11:13, the following exchange occurred:

> The COURT: [Y]ou have to show all of those things in order to show that you qualify for the Safety Valve provision and, therefore, I could go below the five-year mandatory sentence. Do you understand that?
>
> The DEFENDANT: Yes.
>
> The COURT: Understanding that, do you still want to enter a plea of guilty?
>
> The Defendant: Yes.

Id. 11:14-22; see also id. 14:20-15:6. Moreover, the defendant's claim that his counsel's promise that he would receive a lighter sentence was at the root of his decision to plead guilty is further undermined by the following exchange:

> The COURT: Has anybody promised or suggested to you that merely because you were pleading guilty necessarily meant that I was going to give you a lighter sentence?
> The DEFENDANT: No.

Id. at 40:16-20. Finally, the Court engaged in the following colloquy with the defendant:

> The COURT: Now, there have been some agreements that you, your lawyer and the government have made in reference to the Sentencing Guidelines. I, obviously, will take into account what those agreements are, but you should understand that I am not part of those agreements and therefore, I am not bound by those agreements.
>
> So even though you all have agreed to certain things regarding the Sentencing Guidelines, if I decide I am not going to go along with those agreements, I can do that, and if I do that, that would not be a basis for you to withdraw your guilty plea. Do you understand that?
>
> The DEFENDANT: Yes.
>
> The COURT: Understanding that, do you still want to enter a plea of guilty?
>
> The DEFENDANT: Yes.

Id. 15:23-16:13. Based upon this record, the Court finds that Mr. Sutton was fully made aware that the Court was required to sentence him to a mandatory sixty-month prison sentence, and he cannot now assert that he would have proceeded to trial but for counsel's purportedly erroneous representations. See United States v. Talley, 674 F. Supp. 2d 221, 226-227 (D.D.C. 2009) (holding that the defendant was not prejudiced based on "conclusory and unsubstantiated" allegations that his counsel guaranteed that his sentence would be at or below the statutory minimum because the defendant acknowledged at the plea hearing that "his lawyer's sentencing prediction was not conclusive, and that the court would make the final determination of his guideline range").

Second, Mr. Sutton's claim that he was prejudiced by his counsel when she failed to ask the Court to consider imposing a thirty to thirty-seven month sentencing guideline is without merit. It would have been a futile endeavor for counsel to seek a prison sentence in the thirty to thirty-seven month range because Mr. Sutton failed to satisfy one of the five requirements of the "Safety Valve" provision - he refused to provide the "[g]overnment [with] all [the] information and evidence the defendant ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." The Government's Memorandum in Aid of Sentencing ¶ 6 (quoting 18 U.S.C. § 3553(f)(5)) (quotation marks omitted). Specifically, Mr. Sutton refused to inform the government about his mother's involvement in the offenses he was charged with committing. See Gov't's Opp'n, Ex. D (October 31, 2009 Sentencing Hearing Transcripts ("Sentencing Hr'g Tr.")) at 3:3-4:8, 8:12-11:1, 11:22-12:17. As the Court explained to the defendant through his counsel during his sentencing hearing, "[y]ou have got to understand, the law is the law. I don't make the law . . . . The law says that this is a mandatory five-year sentence, unless he qualifies for the [S]afety [V]alve [exception]." Id. at 13:19-23.

Thus, there was no possibility that the defendant could have received a lesser sentence had his counsel sought a thirty to thirty-seven month prison sentence.

Third, Mr. Sutton's claim that he suffered prejudice based on the fact that his counsel acted against his wishes and filed a memorandum asking the Court not to exceed the sixty-month mandatory minimum is without merit. Upon reviewing counsel's sentencing memorandum, it is clear that the defendant's argument is misplaced because the purpose of the memorandum was not to request that the Court sentence Mr. Sutton to no more than the mandatory minimum prison term. Rather, she asked the Court to allow the defendant to self-report to a correctional facility to commence serving his prison sentence at a later date, so that he could spend the Christmas holiday season with his family. See Defendant's Sentencing Memorandum at 3. Accordingly, counsel's efforts did not prejudice Mr. Sutton, as she merely sought to have the commencement of his prison sentence delayed so he could spend time with his children before serving his sentence.

Finally, the Court finds unpersuasive Mr. Sutton's assertion that, due to counsel's failure to fully explain the sentencing procedure to him, his guilty plea was not knowing, intelligent, and "done with sufficient awareness of the relevant circumstances and likely consequences." United States v. Brady, 397 U.S. 742, 747 n.4 (1970) (stating that a criminal defendant may not waive the right to trial unless he does so "intelligent[ly] and voluntary[ily]"); see also United States v. Tolson, 372 F. Supp. 2d 1, 11 (D.D.C. 2005) (quoting Hill, 474 U.S. at 56 for the proposition that when the court is assessing the validity of a guilty plea, the court must determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"). Any failure by defense counsel to adequately explain the sentencing procedures to Mr. Sutton was remedied during the colloquy between the Court and Mr. Sutton at

the guilty-plea hearing. Gov't's Opp'n, Ex. C (Plea Hr'g Tr.) at 7:17-11:22, 13:21-19:14. As noted above, the Court repeatedly explained to Mr. Sutton that it was required by law to sentence him to a mandatory sixty-month term of incarceration. Moreover, as the transcript of the guilty plea hearing shows, the defendant was thoroughly advised by the Court of factors the Court would have to consider in determining what sentence he should receive, id. 13:21-15:6, in addition to all of the potential sentencing consequences resulting from his guilty plea, id. 20:15-40:15. Given this record, the Court must conclude that it is exceedingly unlikely that Mr. Sutton would have insisted on going to trial, but for his counsel's purportedly inadequate advice. See United States v. Rubalcaba, 811 F.2d 491, 494 (9th Cir. 1986) (holding that an ineffective assistance of counsel claim failed because even if the attorney misinformed the defendant regarding the differences between consecutive and concurrent sentencing, the district court adequately informed the defendant of the maximum possible penalty).

### IV. Conclusion

For the foregoing reasons, the Court denies Mr. Sutton's Section 2255 motion to modify his sentence. Mr. Sutton has not met his burden of showing that he suffered any prejudice resulting from his attorney's purported errors, and because the record conclusively demonstrates that the defendant is not entitled to any relief, no evidentiary hearing is necessary. See 28 U.S.C. § 2255(b) (requiring an evidentiary hearing, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

**SO ORDERED** this 16th day of August, 2011.[7]

REGGIE B. WALTON
United States District Judge

---

[7] An order will be issued contemporaneously with this memorandum opinion (1) denying Mr. Sutton's Section 2255 motion and (2) closing this case.